1 | Howard W. Rubinstein (Fla. SBN: 0104108)
2 | *howardr@pdq.net*
| LAW OFFICES OF
3 | HOWARD W. RUBINSTEIN
4 | P.O. Box 4839
| Aspen, Colorado 81612
5 | (832) 715-2788 . (561) 688-0630 (f)
6 | *(To apply as counsel pro hac vice)*

7 | Harold M. Hewell (Cal. SBN: 171210)
8 | *hmhewell@hewell-lawfirm.com*
| HEWELL LAW FIRM
9 | 105 West F Street, Second Floor
10 | San Diego, California 92101
| (619) 235-6854 . (888) 298-0177 (f)
11 |

12 | *Attorneys for Plaintiff*

13 | **UNITED STATES DISTRICT COURT**

14 | **CENTRAL DISTRICT OF CALIFORNIA, EASTERN DIVISION**

15 | **KRYSTAL BONILLA,** as an
16 | individual, and on behalf of all others
| similarly situated,
17 |
18 | *Plaintiff,*
19 | *vs.*
20 |
21 |
22 | **UNITED BRANDS COMPANY,**
23 | **INC.**, a California corporation, and
| **7-ELEVEN, INC.**, a Texas
24 | corporation, and **DOES 1** through
25 | **20**, inclusive,
26 | *Defendants.*
27 |
28 |

Civil **CV11 0386** MRF (DTBx)

**COMPLAINT FOR
EQUITABLE RELIEF AND
DAMAGES**

*Class Action*

*Jury Trial Requested*

Plaintiff, Krystal Bonilla, by and through counsel, files this Complaint individually and on behalf of all others similarly situated, and alleges against Defendants, United Brands Company, Inc. ("UBC") and 7-Eleven, Inc. ("7-Eleven") as set forth below.

## I. VENUE AND JURISDICTION

1.     This Court has jurisdiction over the subject matter presented by this Complaint because it is a class action arising under the Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005), which explicitly provides for the original jurisdiction of the Federal Courts of any class action in which any member of the plaintiff class is a citizen of a state different from any Defendant, and in which the matter in controversy exceeds in the aggregate the sum of $5,000,000.00, exclusive of interest and costs.

2.     As set forth below, Plaintiff is a citizen of California, and Defendant 7-Eleven is a citizen of Texas. Therefore, diversity of citizenship exists under CAFA, as required by 28 U.S.C. § 1332(d)(2)(A).

3.     Plaintiff alleges that the total claims of the individual members of the Plaintiff Class in this action are in excess of $5,000,000.00 in the aggregate, exclusive of interest and costs, as required by 28 U.S.C. § 1332(d)(2), (5).

4.     Furthermore, Plaintiff alleges on information and belief that more than two-thirds of all of the members of the proposed Plaintiff Class in the aggregate are citizens of a state other than California, where this action is originally being filed, and that the total number of members of the proposed Plaintiff Class is greater than 100, pursuant to 28 U.S.C. § 1332(d)(5)(B).

5.     This Court has authority to exercise personal jurisdiction over Defendant UBC because UBC maintains its principal place of business in, and conducts business from, California, and it, directly and through its agents, has substantial contacts with, and receives benefits and income from and

through, the State of California.

6. This Court has authority to exercise personal jurisdiction over Defendant 7-Eleven because 7-Eleven conducts business from a substantial number of 7-Eleven stores located in California, and it, directly and through its agents, has substantial contacts with, and receives benefits and income from and through, the State of California.

7. Venue in this Judicial District is proper pursuant to 28 U.S.C. §1391(a)(3) because, as set forth below, Plaintiff purchased the subject products of this action in this Judicial District.

8. The "Declaration of Harold M. Hewell, Pursuant to Civil Code §1780(c) of the Consumer Legal Remedies Act, Civil Code §§1750 et seq." regarding venue under the California Consumer Legal Remedies Act ("CLRA") is submitted herewith and is incorporated herein by reference.

## II. PARTIES

9. Plaintiff Krystal Bonilla is an individual who is a citizen of Rialto, California, located in the County of San Bernardino. She therefore resides in this Judicial District. Ms. Bonilla purchased the subject product of this complaint, a caffeinated alcoholic beverage by the brand name of Max Energy Drink[1] ("Product") from a 7-Eleven located at 1833 North Riverside Avenue, Rialto, California, on September 17, 2010; on September 25, 2010, she purchased two more cans of the Product from that same store. Therefore, both transactions that are the subject of this Complaint occurred within this Judicial District. The Product is manufactured for and/or by UBC, which markets, advertises and, through various retailers, including Defendant 7-

---

[1] The Product is sold in various flavors, which include: green apple, watermelon, and vibe.

Eleven, sells the Product to consumers. Ms. Bonilla respectfully requests a jury trial on all claims so triable.

10.    Defendant UBC is a California corporation which lists with the California Secretary of state a principal place of business located at 5355 Mira Sorrento Place, Suite 270, San Diego California 92121 and a registered agent for service of process by the name of Shana Black, also located at 5355 Mira Sorrento Place, Suite 270, San Diego California 92121.

11.    Defendant 7-Eleven is a Texas corporation which lists with the California Secretary of State a principal place of business located at 1722 Routh Street, Suite 1000, Dallas Texas 75201-2506, and a registered agent for service of process by the name of Corporation Service Company Which Will Do Business In California As CSC - Lawyers Incorporating Service, located at 2730 Gateway Oaks Drive, Suite 100 Sacramento California 95833.

### III. GENERAL ALLEGATIONS

12.    All allegations herein are based on information and belief and/or are likely to have evidentiary support after reasonable opportunity for further investigation and discovery.

13.    Plaintiff alleges that, at all times relevant herein, UBC and its subsidiaries, affiliates, and other related entities, as well as their respective employees, were the agents, servants and employees of UBC, and at all times relevant herein, each was acting within the purpose and scope of that agency and employment.

14.    Plaintiff further alleges that, at all times relevant herein, 7-Eleven and its subsidiaries, affiliates, 7-Eleven stores and other related entities, as well as their respective employees, were the agents, servants and employees of 7-Eleven, and at all times relevant herein, each was acting within the purpose and scope of that agency and employment.

15.    The true names and capacities of Defendants named herein as

Does 1 through 20, inclusive, are unknown to Plaintiff who therefore sues said Defendants, and each of them, by such fictitious names. Plaintiff will amend this Complaint to show their true names and capacities when the same has been ascertained. Plaintiff is informed and believes and based thereon alleges that Defendants named herein and each of said fictitiously named Defendants are negligently or otherwise legally responsible in some manner for the occurrences herein alleged and that Plaintiff's injuries and damages as hereinafter alleged were proximately caused by said negligence or other acts.

16. Whenever reference in this Complaint is made to any act by UBC and/or 7-Eleven or their respective subsidiaries, affiliates and other related entities, as well as the respective employees thereof, such allegation shall be deemed to mean that the principals, officers, directors, employees, agents, and/or representatives of the referenced entity committed, knew of, performed, authorized, ratified and/or directed that act or transaction on behalf of that entity while actively engaged in the scope of their duties.

## IV. FACTUAL ALLEGATIONS

17. The Product is a flavored alcoholic beverage[3] manufactured by and/or for UBC, which markets, advertises and sells the Product in a variety of flavors throughout the United States. The Product at all times relevant herein was sold in 23.5-ounce cans and contained from up to 12 percent alcohol by volume ("ABV") significantly more than standard beer, which usually contains 4 to 5 percent ABV by volume.[5]

---

[3] See Note 1.

[5] "Serious Concerns Over Alcoholic Beverages with Added Caffeine," *Consumer Update, FDA Consumer Health Information,* Food and Drug Administration, November 2010. n. pag. Web. 21 November 2010

9. In addition to the high alcohol content, the Product contained significantly high amounts of caffeine. On information and belief, Plaintiff alleges that each 23.5-ounce can of the Product contained approximately 124.95 milligrams of caffeine.[7] According to the Mayo Clinic, an 8-ounce cup of coffee contains 100 to 200 milligrams and a 12-ounce Coke has 35 milligrams.[9] The Product also contained taurine, an amino acid that supports neurological development and helps regulate the level of water and mineral salts in the blood, also is believed to have antioxidant properties. The effects of heavy or long-term taurine use are largely unknown.[10]

---

<http://www.fda.gov/downloads/ForConsumers/ConsumerUpdates/UCM234132.pdf>. A true and correct copy of that Consumer Update is attached hereto as Exhibit A and incorporated by reference. Also see representation of the Product marketing inserted into this Complaint below.

[7] Chetry, Kiran, "Michael Michail - Interview," *BNET,* 18 November 2010. n. pag. Web. 11 January 2011 http://findarticles.com/p/news-articles/analyst-wire/mi_8077/is_20101118/michael-michail-interview/ai_ n56320144/. According to that interview, UBC used caffeine at levels of 180 parts per million in its products. That is equivalent to 179.794620066 milligrams per Liter, and each Liter contains 33.8140226 Fluid Ounces (U.S.). Therefore, a 23.5-ounce can of the Product contains approximately 124.95 milligrams of caffeine in each 23.5-ounce can (23.5 ounces ÷ 33.8140226 ounces = 69.497795%. 69.497795% of 179.794620066 milligrams per Liter = 124.953296 milligrams of caffeine in each 23.5-ounce can.

[9] Zezima, Katie, "A Mix Attractive to Students and Partygoers," *New York Times,* 26 October 2010. n. pag. Web. 21 November 2010 <http://www.nytimes.com/2010/10/27/us/ 27drinkbox.html>.

[10] Zeratsky, R.D., L.D., Katherine, "Taurine in energy drinks: What is it?"

18.    The U.S. Food and Drug Administration ("FDA") sent the company a warning letter date November 17, 2010, stating that: "FDA is aware that, based on the publicly available literature, a number of qualified experts have concerns about the safety of caffeinated alcoholic beverages. Moreover, the agency is not aware of data or other information to establish the safety of the relevant conditions of use for your product."[11]

19.    In that Warning Letter, the FDA cited studies reflecting its concerns about beverages containing an alcohol/caffeine mix:

> Based upon the publicly available literature, FDA has the following specific concerns about the safety of caffeine when used in the presence of alcohol.[2] [Footnote in original; set forth below.]
>
> • Reports in the scientific literature have described behavioral effects that may occur in young adults when energy drinks are consumed along with alcoholic beverages (O'Brien et al., 2008; Thombs et al., 2010; Miller, 2008).
>
> • Studies suggest that the combined ingestion of caffeine and alcohol may lead to hazardous and life-threatening situations because caffeine counteracts some, but not all, of alcohol's adverse effects. In one study, a mixture of an energy drink and

_MayoClinic.com_.    n.    pag.    Web.    21    November    2010 <http://www.mayoclinic.com/health/taurine/AN01856>.

[11] Given, Joann M., Acting Director, Office of Compliance, Center for Food Safety and Applied Nutrition, Food and Drug Administration, "Warning Letter" 17 November 2010. pp. 1-2, Web. 6 January 2011 <http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ucm234002.htm> ("Warning Letter"). A true and correct copy of that Warning Letter is attached hereto as Exhibit B and incorporated by reference.

alcohol reduced subjects' subjective perception of intoxication but did not improve diminished motor coordination or slower visual reaction times using objective measures (Ferreira et al., 2006). In a dual-task model, subjects co-administered caffeine and alcohol reported reduced perception of intoxication but no reduction of alcohol-induced impairment of task accuracy (Marczinski and Fillmore, 2006).

• Because caffeine alters the perception of alcohol intoxication, the consumption of pre-mixed products containing added caffeine and alcohol may result in higher amounts of alcohol consumed per drinking occasion, a situation that is particularly dangerous for naïve drinkers (Oteri et al., 2007).

---

[2] As used in the discussion below, the term "energy drink" identifies beverages that contain a significant amount of calories and caffeine as well as other ingredients, such as taurine, herbal extracts, or vitamins (Heckman et al., 2010). [12]

---

20.   The FDA's Warning Letter gave UBC 15 days to address the issues raised in the letter or face possible enforcement action, which could range from "seizure of illegal products and injunctions and prosecutions against manufacturers and distributors of those products."[13]

21.   On November 24, 2010, the FDA reported it had been informed by UBC that it was no longer marketing the Product.[14]

---

[12] Id. at 2.

[13] Id.

[14] "Update on Caffeinated Alcoholic Beverages; FDA Announces Progress on Removal of Certain Caffeinated Alcoholic Beverages from the Market," *News*

22.    UBC and manufacturers of similar products have been under scrutiny by the FDA for more than a year. In November 2009, at the request of 18 state attorneys general, the agency contacted UBC and other manufacturers of caffeinated alcoholic beverages to provide information on the safety of adding caffeine to their products.[15]

23.    July 2010, U.S. Senator Charles E. Schumer of New York asked the Federal Trade Commission to investigate whether the drinks, which are sold in colorful packaging fruit flavors, were "explicitly designed to attract under-age drinkers."[16] Schumer had expressed concern that the vibrant packaging increased the probability that the caffeinated alcoholic beverages

---

*& Events, Food and Drug Administration,* 24 November 2010. n. pag. Web. 6 January 2010 <http://www.fda.gov/NewsEvents/PublicHealthFocus/ ucm234900.htm>.

[15] Goodnough, Abby, "F.D.A. Issues Warning Over Alcoholic Energy Drinks," *New York Times,* 17 November 2010. n. pag. Web. 21 November 2010 <http://www.nytimes.com/2010/11/18/us/18drinks.html>."FDA Warning Letters issued to four makers of caffeinated alcoholic beverages," *FDA News Release,* 17 November 2010. n. pag. Web. 22 November 2010 <http://www.fda.gov/NewsEvents/Newsroom/PressAnnouncements/ucm 234109.htm>. A true and correct copy of that press release is attached hereto as Exhibit C and incorporated herein by reference.

[16] "Schumer: FDA To Effectively Ban Caffeinated Alcoholic Drinks; FTC Will Notify Manufacturers That They May Be Engaged in Illegal Marketing of Unsafe Beverages," press release from the Office of U.S Senator Charles E. Schumer, 16 November 2010, n. pag. Web. 22 November 2010 <http://schumer.senate.gov/new_website/record.cfm?id=328578>. A true and correct copy of that press release is attached hereto as Exhibit D and incorporated by reference.

would be attract younger consumers, and that parents and business owners stocking such beverages might be misled by the packaging.



Images retrieved from FDA website on January 11, 2011,
(http://www.fda.gov/Food/FoodIngredientsPackaging/ucm233755.htm)

24. As a result of the deceptive marketing of The Product as set forth above, UBC has been able to charge a price premium for The Product over similar alcoholic beverages that do not contain caffeine.

25. As noted above, Ms. Bonilla purchased three cans of the Product: one from a 7-Eleven located at 1833 North Riverside Avenue, Rialto, California, on September 17, 2010, and two more cans of the Product from that same store on September 25, 2010. Nothing in the advertising, labeling,

packaging, marketing, promotion and selling of the beverages gave her any warning of the particular dangers of drinking a caffeinated beverage with high alcoholic content, set forth in detail above.

26.    Given the foregoing, Plaintiff contends she was misled by UBC into purchasing and paying for a dangerous product that was not what it was represented to be.

27.    As a direct result, she has suffered actual damages in that she has been deprived of the benefit of her bargain and has spent money purchasing The Product at a price premium when it actually had significantly less value than was reflected in the price she paid for it.

28.    In fact, had she known the true facts about The Product, she would not have purchased it at all.

### V. CLASS ACTION ALLEGATIONS

29.    Plaintiff realleges and incorporates by reference the allegations set forth in each of the preceding paragraphs of this Complaint.

30.    Pursuant to California Civil Code §1781, California Code of Civil Procedure §382, and Federal Rule of Civil Procedure ("FRCP") 23, Plaintiff brings this class action and seeks certification of the claims and certain issues in this action on behalf of herself and all persons who, during the Class Period (defined as the period extending back four years prior to the filing of this action, or to the date The Product was first sold in its caffeinated formulation, whichever is most recent), purchased for personal use the caffeinated The Product manufactured, advertised and sold by UBC.

31.    UBC's practices and omissions were applied uniformly to all members of the Class, including any subclass arising out of the California statutory claims, so that the questions of law and fact are common to all members of the Class. All members of the putative Class were and are similarly affected by not receiving disclosure of the risks associated with

drinking The Product, and the relief sought herein is for the benefit of Plaintiff and members of the putative Class.

32.   Excluded from the Class are employees and agents of UBC, 7-Eleven, the Judge and his or her relatives back to the second degree of affinity, officers and directors of UBC, and counsel for Plaintiff and the Class.

33.   Plaintiff is informed and believes and, on that basis, alleges that the proposed Class is so numerous that joinder of all members would be impracticable. Based on the annual sales of The Product and its popularity, it is apparent that the number of consumers of The Product would be so large as to make joinder impossible.

34.   Questions of law and fact common to the Plaintiff Class exist that predominate over questions affecting only individual members, including, inter alia:

> a.   Whether the practices, representations and failure to warn of the dangers of The Product, arising from the actions of UBC and 7-Eleven in connection with their respective roles in connection with the labeling, packaging, advertising, marketing, promotion and sales of The Product, were deceptive, unlawful or unfair in any respect, thereby violating California's Unfair Competition Law ("UCL"), Bus. & Prof. Code § 17200, et seq.;
>
> b.   Whether the practices, representations and failure to warn of the dangers of The Product, arising from the actions of UBC and 7-Eleven in connection with their respective roles in the labeling, packaging, advertising, marketing, promotion and sales of The Product were deceptive, unlawful or unfair in any respect, thereby violating California's False Advertising Law ("FAL"), Bus. & Prof

Code § 17500, et seq.;

c.  Whether UBC's practices made in connection with the labeling, packaging, advertising, marketing, promotion and sales of The Product violated California's Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1750, et seq.;

d.  Whether UBC misrepresented the characteristics or other aspects of The Product;

e.  Whether UBC failed to disclose, withheld or misrepresented material information regarding adverse health effects from the use of The Product in an effort to deceive consumers;

f.  Whether UBC knowingly and intentionally concealed from Plaintiff and members of the putative Class material information regarding adverse health effects from the use of The Product;

g.  Whether UBC's conduct as set forth above injured consumers and, if so, the nature and extent of the injury; and

h.  Whether UBC has been unjustly enriched, such that disgorgement of profits is proper, for the wrongful conduct set forth herein.

35.  The claims asserted by Plaintiff in this action are typical of the claims of the members of the Plaintiff Class, as the claims arise from the same course of conduct by UBC and 7-Eleven and the relief sought is common.

36.  Plaintiff will fairly and adequately represent and protect the interests of the members of the Plaintiff Class. Plaintiff has retained counsel competent and experienced in both consumer protection and class action

litigation.

37.    Certification of this class action is appropriate under California Civil Code §1781, California Code of Civil Procedure §382, and FRCP 23 because the questions of law or fact common to the respective members of the Class predominate over questions of law or fact affecting only individual members.

38.    This predominance makes class litigation superior to any other method available for the fair and efficient adjudication of these claims. Absent a class action, it would be highly unlikely that the representative Plaintiff or any other members of the Class would be able to protect their own interests because the cost of litigation through individual lawsuits might exceed expected recovery.

39.    Certification also is appropriate because UBC and 7-Eleven acted or refused to act on grounds generally applicable to the Class, thereby making appropriate the relief sought on behalf of the Class as a whole. Further, given the large number of consumers of The Product, allowing individual actions to proceed in lieu of a class action would run the risk of yielding inconsistent and conflicting adjudications.

40.    A class action is a fair and appropriate method for the adjudication of the controversy, in that it will permit a large number of claims to be resolved in a single forum simultaneously, efficiently, and without the unnecessary hardship that would result from the prosecution of numerous individual actions and the duplication of discovery, effort, expense and burden on the Courts that individual actions would engender.

41.    The benefits of proceeding as a class action, including providing a method for obtaining redress for claims that would not be practical to pursue individually, outweigh any difficulties that might be argued with regard to the management of this class action.

# VI. FIRST CAUSE OF ACTION

## Violations of the UCL, Bus. & Prof. Code §§17200, et seq.
### *(Against UBC, 7-Eleven and Does 1 through 5, inclusive)*

42.    Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

43.    This cause of action is brought on behalf of Plaintiff and members of the general public pursuant to Cal. Bus. & Prof. Code §§17200, et seq., which provides that "unfair competition shall mean and include any unlawful, unfair or deceptive business act or practice and unfair, deceptive, untrue or misleading advertising and any act prohibited by Chapter I (commencing with Section 17500) as Part 3 of Division 7 of the Business and Professions Code."

44.    Plaintiff alleges that UBC and 7-Eleven committed unfair business acts and/or practices.

45.    The utility of the practices engaged in by UBC and 7-Eleven in their respective roles in advertising, labeling, packaging, marketing, promotion and selling The Product without warning of the dangers inherent in consuming a caffeinated beverage with high alcohol content is negligible, if any, when weighed against the harm to the general public, Plaintiff and members of the Class.

46.    The harmful impact upon members of the general public and the Class who purchased and used The Product outweighs any reasons or justifications by UBC and 7-Eleven for the unfair business practices UBC and 7-Eleven employed to sell The Product described herein.

47.    UBC and 7-Eleven had an improper motive (profit before accurate marketing) in its practices related to the advertising, labeling, packaging, marketing, promotion and selling of The Product, as set forth above.

48.     The use of such unfair business acts and practices was and is under the sole control of UBC and 7-Eleven, and was deceptively hidden from members of the general public in UBC and 7-Eleven's advertising, labeling, packaging, marketing, promotion and selling of The Product.

49.     UBC and 7-Eleven committed a deceptive act or practice by failing to properly disclose to consumers the dangers associated with drinking The Product, as set forth in detail above. UBC and 7-Eleven also committed deceptive acts and/or practices by, respectively, using fruit flavor names for The Product, as well as vibrant colors and designs in the packaging and labeling of The Product, and by stocking of The Product near non-alcoholic energy drinks.

50.     These deceptive acts and practices had a capacity, tendency, and/or likelihood to deceive or confuse reasonable consumers into believing that The Product posed no greater risk to the health of those who drank it than did other non-caffeinated alcoholic beverages.

50.     UBC also committed unlawful business practices by violating the FAL and CLRA as set forth in detail below. The violations of these statutes serve as predicate violations of this prong of the UCL.

51.     As a purchaser and consumer of The Product, and as a member of the general public in California who purchased and used The Product, Plaintiff is entitled to and does bring this class action seeking all available remedies under the UCL.

52.     UBC and 7-Eleven's practices, as set forth above, were intended to promote the sale of The Product and constitute unfair, deceptive and/or unlawful business practices within the meaning of California Bus. & Prof. Code §§17200, et seq.

53.     Pursuant to California Bus. & Prof. Code §17203, Plaintiff, on behalf of herself and members of the general public, seeks an order of this

Court restoring all monies that may have been acquired by UBC and 7-Eleven as a result of acts or practices found to have violated the UCL.

54.   Plaintiff and members of the general public may be irreparably harmed and/or denied an effective and complete remedy if such an order is not granted.

55.   As a result of the violations of the UCL by UBC and 7-Eleven, Plaintiff and the Class are entitled to restitution for out-of-pocket expenses and economic harm.

56.   Pursuant to Civil Code §3287(a), Plaintiff and members of the Class are further entitled to pre-judgment interest as a direct and proximate result of the wrongful conduct by UBC and 7-Eleven.

57.   The amount on which interest is to be applied is a sum certain and capable of calculation, and Plaintiff and members of the Class are entitled to interest in an amount according to proof.

## VII. SECOND CAUSE OF ACTION
### Violations of the FAL, Bus. & Prof. Code §§17500, et seq.
### (Against UBC and Does 6 through 10, inclusive)

58.   Plaintiff repeats each and every allegation contained in the paragraphs above and incorporates such allegations by reference herein.

59.   In violation of California Bus. & Prof. Code §17500, UBC has disseminated, or caused to be disseminated advertising, labeling, packaging, marketing, and promotion of The Product that is deceptive because of its failure to warn of the particular dangers inherent in consuming a caffeinated beverage with high alcohol.

60.   UBC compounded this deception by using fruit names for The Product, as well as vibrant colors and designs in the advertising, packaging and labeling of The Product, and by promoting the stocking of The Product near non-alcoholic energy drinks.

61.   These acts deceptively represented The Product as posing no greater risk to the health of those who drank it than did other non-caffeinated alcoholic beverages.

62.   UBC's representations and omissions for The Product are by their very nature unfair, deceptive and/or unlawful within the meaning of California Bus. & Prof. Code §§17500, et seq., and were likely to deceive reasonable consumers.

63.   In making and disseminating the representations and omissions alleged herein, UBC knew or should have known they were misleading, particularly given the existence of peer-reviewed scientific studies indicating the dangers of caffeinated alcoholic beverages, as referenced in the FDA warning letter.

64.   Accordingly, UBC acted in violation of California's Bus. & Prof. Code §§17500, et seq.

65.   As a direct and proximate result of UBC's wrongful conduct, Plaintiff and the Class members have suffered substantial harm.

66.   Pursuant to Bus. & Prof. Code §17535, Plaintiff, on behalf of herself and members of the general public, seeks an order of this Court restoring all monies that may have been acquired by UBC as a result of such deceptive acts and/or practices.

67.   As a result of UBC's violations of the FAL, Plaintiff and the Class are entitled to restitution for out-of-pocket expenses and economic harm.

68.   Pursuant to Civil Code §3287(a), Plaintiff and members of the Class are further entitled to pre-judgment interest as a direct and proximate result of UBC's wrongful conduct.

69.   The amount on which interest is to be applied is a sum certain and capable of calculation, and Plaintiff and members of the Class are entitled to interest in an amount according to proof.

# VIII. THIRD CAUSE OF ACTION

## Violations of the CLRA, Cal. Civil Code § 1750, et seq.

### *(Against UBC and Does 11-15, inclusive)*

70.    Plaintiff incorporates by reference each preceding paragraph as though fully set forth at length herein.

71.    This cause of action is brought pursuant to the CLRA.

72.    Plaintiff and each member of the Class are "consumers" within the meaning of Civil Code §1761(d).

73.    The purchases of The Product by Plaintiff and each member of the Class were and are "transactions" within the meaning of Civil Code §1761(e).

74.    UBC's marketing, promotion, and sales of The Product within California, as alleged herein, violated the CLRA in at least the following respect as set forth in detail above: in violation of Civil Code §1770(a)(7), UBC represented that The Product is of a particular standard, quality, or grade, which it is not.

75.    Plaintiff seeks and is entitled to equitable relief in the form of an order:

a.    Requiring UBC to make full restitution of all monies wrongfully obtained as a result of the conduct described above; and

b.    Requiring UBC to disgorge all ill-gotten gains flowing from the conduct described above.

76.    Plaintiff, by and through counsel, is notifying UBC in writing of the particular violations of section 1770 of the CLRA and demanding that it take certain corrective actions within the period prescribed by the CLRA for such demands.

77.    In the event that UBC fails to adequately respond to the demands

for corrective action within the time prescribed by the CLRA, Plaintiff intends to amend this pleading to request statutory damages, actual damages, plus punitive damages, interest and attorneys' fees as authorized by §1780(a) of the CLRA.

78.    Regardless of an award of damages, however, Plaintiff seeks and is entitled to, pursuant to §1780(a)(2) of the CLRA, an order for the equitable relief described above, as well as costs, attorney's fees and any other relief which the Court deems proper.

## IX. FOURTH CAUSE OF ACTION

### Fraudulent Concealment

### *(Against UBC and Does 16 through 20, inclusive)*

79.    Plaintiff incorporates by reference each preceding paragraph as though fully set forth at length herein.

80.    Plaintiff alleges that UBC withheld and suppressed facts in its advertising, labeling, packaging, marketing and promotion of The Product that led consumers to falsely believe that The Product posed no greater risk to the health of those who drank it than did other non-caffeinated alcoholic beverages.

81.    This is false, as set forth in detail above.

82.    UBC was bound to disclose the truth about these matters, but failed to do so. UBC knew that these claims were false, given the prevalence of peer-reviewed scientific studies indicating the dangers of caffeinated alcoholic beverages, as referenced in the FDA warning letter.

83.    Nevertheless, UBC concealed the dangers inherent in The Product's combination of high levels of caffeine with high alcohol content, and it took steps in the advertising, labeling, packaging, marketing and promotion of The Product to prevent consumers from learning the true facts regarding The Product.

84.    The concealment of the true facts from Plaintiff and members of the Class was done with the intent to induce Plaintiff and members of the Class to purchase and use The Product.

85.    The reliance by Plaintiff and members of the Class was reasonable and justified in that UBC appeared to be, and represented itself to be, a reputable business.

86.    As a direct and proximate result of the fraud and deceit alleged, Plaintiff and members of the Class suffered actual damages in that they have been deprived of the benefit of their bargain and have spent money purchasing The Product at a price premium when it actually had significantly less value than was reflected in the price they paid for it.

87.    Plaintiff alleges that UBC intended for consumers to rely on its advertising, labeling, packaging, marketing and promotion of The Product, as well as its suppression of the true facts about The Product, in purchasing and drinking The Product.

88.    Plaintiff and other members of the general public, in purchasing and using the  Product as herein alleged, did rely on UBC's advertising, labeling, packaging, marketing and promotion of The Product, as well as UBC's suppression of facts, all to their damage as alleged.

89.    In doing these things, UBC was guilty of malice, oppression and fraud, and Plaintiff and members of the Class are, therefore, entitled to recover punitive damages.

### X. PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and all others similarly situated, prays for a judgment:

A.    Certifying the Class as requested herein;

B.    Awarding restitution to Plaintiff and members of the Class of all revenues obtained by UBC and/or 7-Eleven for any act found by this Court

to have violated the UCL in the First Cause of Action;

C.     Awarding restitution to Plaintiff and members of the Class of all revenues obtained by UBC for any act found by this Court to have violated the FAL in the Second Cause of Action;

D.     Awarding restitution and disgorgement of all ill-gotten gains to Plaintiff and members of the Class of all revenues obtained by UBC for any act found by this Court to have violated the CLRA in the Third Cause of Action;

E.     Awarding declaratory and injunctive relief as permitted by law or equity, including directing UBC to identify, with Court supervision, victims of their conduct and pay them restitution and disgorgement of all monies acquired by UBC by means of any act or practice declared by this Court to be wrongful;

F.     Ordering that UBC be required to engage in a corrective advertising campaign;

G.     Awarding Plaintiff and members of the Class damages for the fraudulent concealment by UCB, as set forth in the Fourth Cause of Action;

Awarding Plaintiff and members of the Class punitive damages for the fraudulent concealment by UCB, as set forth in the Fourth Cause of Action;

H.     Awarding attorneys' fees and costs; and

I.     Providing such further relief as may be just and proper.

Respectfully submitted,

Dated: January 11, 2011                 HEWELL LAW FIRM

By: <u>(VIA FAX/ELECTRONIC TRANSMISSION)</u>

Harold M. Hewell
*Attorney for Plaintiff*

# **EXHIBITS**

| Exhibit: | Description: | Pages: |
|---|---|---|
| A | "Serious Concerns Over Alcoholic Beverages with Added Caffeine," Consumer Update, FDA Consumer Health Information, Food and Drug Administration, November 2010. n. pag. Web. 21 November 2010 <http://www.fda.gov/downloads/ForConsumers/ConsumerUpdates/UCM234132.pdf>. | 25 |
| B | Given, Joann M., Acting Director, Office of Compliance, Center for Food Safety and Applied Nutrition, Food and Drug Administration, "Warning Letter" 17 November 2010. pp. 1-2, Web. 6 January 2011 <http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ucm234002.htm>. | 27-29 |
| C | "FDA Warning Letters issued to four makers of caffeinated alcoholic beverages," *FDA News Release,* 17 November 2010. n. pag. Web. 10 January 2011 <http://www.fda.gov/NewsEvents/Newsroom/PressAnnouncements/ucm234109.htm>. | 31-32 |
| D | "Schumer: FDA To Effectively Ban Caffeinated Alcoholic Drinks; FTC Will Notify Manufacturers That They May Be Engaged In Illegal Marketing Of Unsafe Beverages," press release from the Office of U.S Senator Charles E. Schumer, 16 November 2010, n. pag. Web. 22 November 2010 <http://schumer.senate.gov/new_website/record.cfm?id=328578>. | 34-35 |

Exhibit A

FDA Consumer Health Information / U.S. Food and Drug Administration
www.fda.gov/consumer

# Serious Concerns Over Alcoholic Beverages with Added Caffeine

    

Caffeinated alcoholic beverages, or CABs, are alcoholic beverages that contain caffeine as an additive and are packaged in combined form.

Alcoholic beverages to which caffeine has been added as a separate ingredient have raised health concerns at the Food and Drug Administration (FDA) as well as in other federal, state, and local agencies.

On Nov. 17, 2010, FDA announced that it had sent warning letters to four companies that make malt versions of these beverages, advising them that the caffeine included as a separate ingredient is an "unsafe food additive."

These warning letters were not directed at alcoholic beverages that only contain caffeine as a natural constituent of one or more of their ingredients, such as a coffee flavoring.

## A Troubling Mix

According to data and expert opinion, caffeine can mask sensory cues that people may rely on to determine how intoxicated they are. This means that individuals drinking these beverages may consume more alcohol—and become more intoxicated—than they realize. At the same time, caffeine does not change blood alcohol content levels, and thus does not reduce the risk of harms associated with drinking alcohol.

Studies suggest that drinking caffeine and alcohol together may lead to hazardous and life-threatening behaviors. For example, serious concerns are raised about whether the combination of alcohol and caffeine is associated with an increased risk of alcohol-related consequences, including alcohol poisoning, sexual assault, and riding with a driver who is under the influence of alcohol.

Malt versions of premixed alcoholic beverages come in containers holding between 12 and 32 liquid ounces. Some may also contain stimulant ingredients in addition to caffeine. Their advertised alcohol-by-volume value is as high as 12 percent, compared to standard beer's usual value of 4 to 5 percent.

These alcoholic beverages are available in many states in convenience stores and other outlets. They often come in large, boldly colored cans comparable in size to "tall" cans of beer—or in containers resembling regular beer bottles.

## FDA Warns Four Firms

FDA issued its November 2010 warning letters to four companies that make caffeinated alcoholic beverages: Charge Beverages Corp., New Century Brewing Co. LLC, Phusion Projects LLC (which does business as the Drink Four Brewing Co.), and United Brands.

The caffeinated malt beverages referenced in these warning letters are
- Core High Gravity HG Green
- Core High Gravity HG Orange
- Four Loko
- Joose
- Lemon Lime Core Spiked
- Moonshot (This product is labeled as "premium beer with caffeine")
- Max

The manufacturers of these products have failed to show that the direct addition of caffeine to their malt beverages is "generally recognized as safe" by qualified experts. Rather, there is evidence that the combinations of caffeine and alcohol in these products pose a public health concern.

"Consumers should avoid these caffeinated alcoholic beverages, which do not meet the FDA's standards for safety," says Joshua M. Sharfstein, M.D., FDA's principal deputy commissioner.

The agency has given the firms 15 days to respond to the warning letters and then may proceed to court to stop their sale. In addition, other alcoholic beverages containing added caffeine may be subject to agency action in the future if scientific data indicate that the use of caffeine in those products does not meet safety standards. FDA

Find this and other Consumer Updates at *www.fda.gov/ForConsumers/ConsumerUpdates*

✉ Sign up for free e-mail subscriptions at *www.fda.gov/consumer/consumerenews.html*

EXHIBIT A, Page 1 of 1
Complaint, Page 25 of 35

Exhibit B

 **U.S. Food and Drug Administration**

Home> Inspections, Compliance, Enforcement, and Criminal Investigations> Enforcement Actions> Warning Letters

## Inspections, Compliance, Enforcement, and Criminal Investigations

### United Brands Company Inc 11/17/10


**Department of Health and Human Services**

Public Health Service
Food and Drug Administration
College Park, MD 20740

**NOV. 17, 2010**

**WARNING LETTER**

**Via FAX and OVERNIGHT MAIL via UPS**

Mr. Michael Michail
United Brands Company, Inc.
5360 Jackson Drive, Suite 208
La Mesa, CA 91942

**Re: 134070**

Dear Mr. Michail:

The Food and Drug Administration (FDA) has reviewed the regulatory status of the ingredients  declared on the label of your products, "Joose" and "Max,"[1] each of which contains caffeine that has been directly added to an alcoholic beverage and packaged in combined caffeine and alcohol form. As it is used in your products, caffeine is an unsafe food additive, and therefore your products are adulterated under section 402(a)(2)(C) of the Federal Food, Drug, and Cosmetic Act (the Act) [21 U.S.C. § 342(a)(2)(C)]. Regulations on the general provisions for food additives are located in Title 21, Code of Federal Regulations, Part 170 (21 CFR 170). You may find copies of the Act and these regulations through links in FDA's Internet home page at http://www.fda.gov[1].

As defined in section 201(s) of the Act [21 U.S.C. § 321(s)], the term "food additive" refers to any substance the intended use of which results in its becoming a component of any food, unless the substance is the subject of a prior sanction or is generally recognized as safe (GRAS) among qualified experts under the conditions of its intended use. Under section 409 of the Act [21 U.S.C. § 348], a food additive is unsafe unless a regulation is in effect that prescribes the conditions under which the additive may be safely used, and the additive and its use or intended use are in conformity with that regulation. There is no food additive regulation authorizing the use of caffeine as a direct addition to alcoholic beverages, and we are not aware of any information to establish that caffeine added directly to alcoholic beverages is the subject of a prior sanction. Likewise, we are not aware of any basis to conclude that caffeine is GRAS under these conditions of use.

FDA's regulations in 21 CFR Part 170 describe the eligibility criteria for classification of a substance added to food as GRAS. Under 21 CFR 170.30(a)-(c), general recognition of safety must be based on the views of qualified experts. The basis of such views may be either (1) scientific procedures or (2) in the case of a substance used in food prior to January 1, 1958, through experience based on common use in food. Further, general recognition of safety requires common knowledge about the substance throughout the scientific community knowledgeable about the safety of substances directly added to food.

FDA's regulations in 21 CFR Part 170 define "common use in food" and establish eligibility criteria for classification as GRAS through experience based on common use in food. Under 21 CFR 170.3(f), common use in food means "a substantial history of consumption of a substance for food use by a significant number of consumers." Under 21 CFR 170.30(c)(1), "[g]eneral recognition of safety through experience based on common use in food prior to January 1, 1958, shall be based solely on food use of the substance prior to January 1, 1958, and shall ordinarily be based upon generally available data and information." Importantly, however, the fact that a substance was added to food before 1958 does not, in itself, demonstrate that such use is safe, unless the pre-1958 use is sufficient to demonstrate to qualified experts that the substance is safe when added to food. See section 201(s) of the Act [21 U.S.C. § 321(s)]; see also Fmali Herb, Inc. v. Heckler, 715 F.2d 1385, 1389-90 (9th Cir. 1983) ("Under the statute, 'common use in food' of an ingredient does not automatically exempt the substance from pretesting requirements. Instead, 'common use in food' merely describes one form of evidence that may be introduced by a proponent for the purpose of meeting the ultimate standard... ").

Similarly, FDA's regulations in 21 CFR Part 170 define "scientific procedures" and establish eligibility criteria for classification as GRAS through scientific procedures. Under 21 CFR 170.3(h), scientific procedures "include those human, animal, analytical, and other scientific studies, whether published or unpublished, appropriate to establish the safety of a substance." Under 21 CFR 170.30(b), general recognition of safety based upon scientific procedures "shall require the same quantity and quality of scientific evidence as is required to obtain approval of a food additive regulation for the ingredient." Section 170.30(b) further states that general recognition of safety through scientific procedures is ordinarily based upon published studies which may be corroborated by unpublished studies and other data and information.

FDA's regulations in 21 CFR Part 170 also define "safe" and "safety." Under 21 CFR 170.3(i), "[s]afe or safety means that there is a reasonable certainty in the minds of competent scientists that the substance is not harmful under the intended conditions of use." The regulations identify factors to be considered in determining the safety of a substance added to food. 21 CFR 170.3(i).

By letter dated November 12, 2009, FDA requested that, within 30 days, your company provide evidence of the rationale, along with supporting data and information, for concluding that the use of caffeine in your products is GRAS or prior sanctioned. The letter informed your company that if FDA determined that the use of caffeine in your alcoholic beverages is neither GRAS nor the subject of a prior sanction, the agency would take appropriate action to ensure that these products are removed from the marketplace. FDA's letter also reiterated that it is the continuing responsibility of your company to ensure that the foods it markets are safe and in compliance with all applicable legal and regulatory requirements.

FDA acknowledges that, by letter dated December 11, 2009, United Brands responded through counsel to the agency's November letter. But, as discussed in more detail below, FDA has reviewed that response and continues to have safety concerns about your caffeinated alcoholic beverage products. Accordingly, the agency is issuing this warning letter.

To establish that the use of a substance in food is GRAS under its specific conditions of use (for example, the GRAS status of caffeine when directly added to an alcoholic beverage), there must be consensus among qualified experts that the substance is safe under its conditions of use, based on publicly available data and information. FDA is aware that, based on the publicly available literature, a number of qualified experts have concerns about

EXHIBIT B, Page 1 of 3

Complaint, Page 27 of 35

the safety of caffeinated alcoholic beverages. Moreover, the agency is not aware of data or other information to establish the safety of the relevant conditions of use for your products. Therefore, the criteria for GRAS status have not been met for the caffeine in your beverages.

Based upon the publicly available literature, FDA has the following specific concerns about the safety of caffeine when used in the presence of alcohol:

- Reports in the scientific literature have described behavioral effects that may occur in young adults when energy drinks are consumed along with alcoholic beverages (O'Brien et al., 2008; Thombs et al., 2010; Miller, 2008).
- Studies suggest that the combined ingestion of caffeine and alcohol may lead to hazardous and life-threatening situations because caffeine counteracts some, but not all, of alcohol's adverse effects. In one study, a mixture of an energy drink and alcohol reduced subjects' subjective perception of intoxication but did not improve diminished motor coordination or slower visual reaction times using objective measures (Ferreira et al., 2006). In a dual-task model, subjects co-administered caffeine and alcohol reported reduced perception of intoxication but no reduction of alcohol-induced impairment of task accuracy (Marczinski and Fillmore, 2006).
- Because caffeine alters the perception of alcohol intoxication, the consumption of pre-mixed products containing added caffeine and alcohol may result in higher amounts of alcohol consumed per drinking occasion, a situation that is particularly dangerous for naive drinkers (Oteri et al., 2007).

GRAS status is not an inherent property sofa substance, but must be assessed in the context of the intended conditions of use of the substance (section 201(s) of the Act [21 U.S.C. § 321(s)]). The assessment includes a consideration of the population that will consume the substance (21 CFR 170.30(b); section 409(b) of the Act [21 U.S.C. § 348(b)]). Therefore, the scientific data and information that support a GRAS determination must consider the conditions under which the substance is safe for the use for which it is marketed. Reports in the scientific literature have raised concerns regarding the formulation and packaging of pre-mixed products containing added caffeine and alcohol. For example, these products, presented as fruit soft drinks in colorful single-serving packages, seemingly target the young adult user. Furthermore, the marketing of the caffeinated versions of this class of alcoholic beverage appears to be specifically directed to young adults (Bonnie and O'Connell, 2004). FDA is concerned that the young adults to whom these pre-mixed, added caffeine and alcohol products are marketed are especially vulnerable to the adverse behavioral effects associated with consuming caffeine added to alcohol, a concern reflected in the publicly available literature (O'Brien et al., 2008; Simon and Mosher, 2007).

It is FDA's view that the caffeine content of your beverages could result in central nervous system effects if a consumer drank one or more containers of your product. Therefore, FDA believes that the consumption of your products, "Joose" and "Max," may result in adverse behavioral outcomes because the caffeine is likely to counteract some, but not all, of the adverse effects of alcohol. The agency is unaware of any data that address the complex, potentially hazardous behaviors that have been identified in the scientific literature as associated with these beverages or that otherwise alleviate our concerns about the effects of consuming these pre-mixed caffeine and alcohol beverages. Moreover, FDA is not aware of any publicly available data to establish affirmatively safe conditions of use for caffeine added directly to alcoholic beverages and packaged in a combined form.

The agency is aware that your company received a Certification/Exemption of Label/Bottle Approval (COLA) from the Alcohol and Tobacco Tax and Trade Bureau (TTB) and that, as part of your application for the COLA, you informed TTB that your product would contain caffeine. A COLA does not constitute a food additive petition approval, a statement regarding GRAS status, or a prior sanction, and you are obligated to abide by the provisions of the Federal Food, Drug, and Cosmetic Act.

Your company's December 11, 2009, response discussed two human clinical studies in the peer reviewed literature that address the safety of the co-consumption of caffeine and alcohol (Ferreira et al., 2006; O'Brien et al., 2008), and purported to identify shortcomings in the design and interpretation of these studies. FDA notes that these alleged deficiencies were included in a letter from your counsel and were not endorsed, supported or otherwise accompanied by the opinion of a qualified expert as to their significance. Even if certain studies in the scientific literature have limitations due to their design or the interpretation of their results, the peer-reviewed literature as a whole is sufficient to raise, among qualified experts, safety concerns about alcoholic beverages to which caffeine has been directly added. Similarly, even if the results from no single study are sufficiently comprehensive to characterize fully the potential responses to beverages containing caffeine added to alcohol, these studies are collectively sufficient to raise concerns about consumption of this combination and to support the conclusion that more research is required. Furthermore, FDA is not aware of any reports in the literature that refute the association between the co-consumption of alcohol and caffeine and adverse behavioral results or that otherwise affirmatively establish the safety of these beverages. Indeed, our review of this literature, as well as certain related studies in animals, shows that there are currently no studies or other information that refute the safety concerns or otherwise affirmatively establish the safety of caffeine directly added to alcoholic beverages. Therefore, we are not aware of a sufficient basis to support a conclusion that caffeine, when directly added to alcohol to form a single beverage, is generally recognized as safe.

In light of the safety concerns identified above, the use of added caffeine in the alcoholic beverage products "Joose" and "Max" does not satisfy the criteria for GRAS status outlined above. Further, FDA is aware of no other exemption from the food additive definition that would apply to caffeine when used as an ingredient in an alcoholic beverage product. Therefore, caffeine as used in your products is a food additive under section 201(s) of the Act [21 U.S.C. § 321(s)] and is subject to the provisions of section 409 of the Act [21 U.S.C. § 348]. Under the latter, a food additive is required to be approved by FDA for its proposed conditions of use prior to marketing. Because caffeine is not an approved food additive for its use in your products, "Joose" and "Max," those products are adulterated within the meaning of section 402(a)(2)(C) of the Act [21 U.S.C. § 342 (a)(2)(C)].

You should take prompt action to correct this violation and prevent its recurrence. Failure to do so may result in enforcement action without further notice. The Act authorizes the seizure of illegal products and injunctions and prosecutions against manufacturers and distributors of those products. Also, we want you to be aware that FDA did not conduct an all-inclusive review of your products, "Joose" and "Max" or any other products that you may manufacture or distribute. Under the applicable law, it is your responsibility, as a manufacturer of these products, to ensure that the foods your firm markets are safe and otherwise in compliance with all applicable legal requirements.

Please advise this office in writing within fifteen (15) days from your receipt of this letter as to the specific steps you have taken to correct the violation identified above and to assure that similar violations do not occur. Your response should include any documentation necessary to show that correction has been achieved. If you cannot complete all corrections within the 15 days, please explain the reason for your delay and the date by which each such item will be corrected and documented.

Please send your reply to Seyra Hammond, Food and Drug Administration, Center for Food Safety and Applied Nutrition, Office of Compliance (HFS-605), 5100 Paint Branch Parkway, College Park, MD 20740.

Sincerely,

/s/

Joann M. Given
Acting Director
Office of Compliance
Center for Food Safety
and Applied Nutrition

cc: Food and Drug Administration
Los Angeles District Office

References

Bonnie, R. and O'Connell, M., Editors, Reducing underage drinking: a collective responsibility. The National Academies Press, 2004.

Ferreira SE, de Mello MT, Pompeia S, and de Souza-Formigoni ML. Effects of energy drink ingestion on alcohol intoxication. Alcohol Clin Exp Res 30, 598-605, 2006.

Heckman, MA, Sherry, K., and Gonzalez de Mejia, E. Energy drinks: an assessment of their market size, consumer demographics, ingredient profile, functionality, and regulations in the United States. Compr Rev Food Sci Food Saf, 9, 303-317, 2010.

Marczinski, CA and Fillmore, MT. Clubgoers and their trendy cocktails: implications of mixing caffeine into alcohol on information processing and subjective reports of intoxication. Exp Clin Psychopharmacol,14,450-458,2006.

Miller, KE. Wired: energy drinks, jock identity, masculine norms, and risk taking. J Am College Health, 56, 481-489, 2008.

O'Brien, MC, McCoy, TP, Rhodes, SO, Wagoner, A, and Wolfson, M. Caffeinated cocktails: energy drink consumption, high-risk drinking, and alcohol-related consequences among college students. Acad Emerg Med 15, 453-460, 2008.

Oteri A, Salvo F, Caputi AP, and Calapai G. Intake of energy drinks in association with alcoholic beverages in a cohort of students of the School of Medicine of the University of Messina. Alcohol Clin Exp Res 31,1677-1680,2007.

Simon M. and Mosher J. Alcohol, energy drinks, and youth: a dangerous mix. Marin Institute, 2007. Thombs, OL, O'Mara, RJ, Tsukamoto, M, Rossheim ME, Weiler, RM, Merves, ML, and Goldberger, BA. Event-level analysis of energy drink consumption and alcohol intoxication in bar patrons. Addict Behav 35, 325-330, 2010.

---

[1] This letter addresses the following flavors of "Joose": green apple, raspberry lemonade, red, blue, orange, dragon, jungle, mamba, panther, watermelon, and lemon tea. This letter addresses the following flavors of "Max": green apple, watermelon, and vibe.

[2] As used in the discussion below, the term "energy drink" identifies beverages that contain a significant amount of calories and caffeine as well as other ingredients, such as taurine, herbal extracts, or vitamins (Heckman et al., 2010).

---

**Links on this page:**

1. http://www.fda.gov

Exhibit C

**FDA** U.S. Food and Drug Administration

## News & Events

**FDA NEWS RELEASE**
**For Immediate Release:** Nov. 17, 2010
**Media Inquiries:** Michael Herndon, 301-796-4673, michael.herndon@fda.hhs.gov
**Consumer Inquiries:** 888-INFO-FDA

**FDA Warning Letters issued to four makers of caffeinated alcoholic beverages**
*These beverages present a public health concern*

The U.S. Food and Drug Administration today warned four companies that the caffeine added to their malt alcoholic beverages is an "unsafe food additive" and said that further action, including seizure of their products, is possible under federal law.

The companies receiving Warning Letters and their products are:

• Charge Beverages Corp.: Core High Gravity HG, Core High Gravity HG Orange, and Lemon Lime Core Spiked
• New Century Brewing Co., LLC: Moonshot
• Phusion Projects, LLC (doing business as Drink Four Brewing Co.): Four Loko
• United Brands Company Inc.: Joose and Max

FDA's action follows a scientific review by the Agency.  FDA examined the published peer-reviewed literature on the co-consumption of caffeine and alcohol, consulted with experts in the fields of toxicology, neuropharmacology, emergency medicine, and epidemiology, and reviewed information provided by product manufacturers.  FDA also performed its own independent laboratory analysis of these products.

"FDA does not find support for the claim that the addition of caffeine to these  alcoholic beverages is 'generally recognized as safe,' which is the legal standard," said Dr. Joshua M. Sharfstein, Principal Deputy Commissioner.  "To the contrary, there is evidence that the combinations of caffeine and alcohol in these products pose a public health concern."

Experts have raised concerns that caffeine can mask some of the sensory cues individuals might normally rely on to determine their level of intoxication.  The FDA said peer-reviewed studies suggest that the consumption of beverages containing added caffeine and alcohol is associated with risky behaviors that may lead to hazardous and life-threatening situations.

The agency said the products named in the Warning Letters are being marketed in violation of the Federal Food, Drug, and Cosmetic Act (the FFDCA).  Each Warning Letter requests that the recipient inform the FDA in writing within 15 days of the specific steps that will be taken to remedy the violation and prevent its recurrence. If a company does not believe its products are in violation of the FFDCA, it may present its reasoning and any supporting information as well.

If the FDA believes that the violation continues to exist, the agency may pursue an enforcement action that could include seizure of the products or an injunction to prevent the firm from continuing to produce the product until the violation has been corrected.

FDA's action today follows a November 2009 request to manufacturers to provide information on the safety of adding caffeine to their products.

FDA is aware that on November 16, Phusion Projects, LLC, the maker of Four Loko, announced its intention to remove caffeine and other stimulants from its drinks.  FDA views this announcement as a positive step. FDA has not yet heard officially from the company about this announcement, including how quickly it will remove present product from circulation and how quickly it will reformulate its product.  FDA intends to work with Phusion Projects, LLC and the other manufacturers to assure their products meet safety standards.

For More Information:

- Caffeinated Alcoholic Beverages -- FDA Web Page[1]
- Caffeinated Alcoholic Beverages -- Consumer Update[2]
- Caffeinated Alcoholic Beverages -- Warning Letters:
    ◦ Charge Beverages Corp.: Core High Gravity HG Green, Core High Gravity HG Orange, and Lemon Lime Core Spiked[3]
    ◦ New Century Brewing Co., LLC: Moonshot[4]
    ◦ Phusion Projects, LLC (doing business as Drink Four Brewing Co.): Four Loko[5]
    ◦ United Brands Company Inc.: Joose and Max[6]
- Qs & As on Caffeine in Alcoholic Beverages[7]
- Caffeinated Alcoholic Beverages -- FDA Page on Flickr[8]
- Caffeinated Alcoholic Beverages -- CDC Fact Sheet[9]
- FTC Sends Warning Letters to Marketers of Caffeinated Alcohol Drinks[10]
- TTB Issues Warning on the Sale or Shipment of Caffeinated Alcohol Beverages Determined by FDA to Be Adulterated[11]

#

Visit the FDA on Facebook[12]

RSS Feed for FDA News Releases[13] [what is RSS?[14]]

---

**Links on this page:**

1. http://www.fda.gov/Food/FoodIngredientsPackaging/ucm190366.htm

2.  http://www.fda.gov/ForConsumers/ConsumerUpdates/ucm233987.htm

3.  http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ucm233990.htm

4.  http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ucm234028.htm

5.  http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ucm234023.htm

6.  http://www.fda.gov/ICECI/EnforcementActions/WarningLetters/ucm234002.htm

7.  http://www.fda.gov/Food/FoodIngredientsPackaging/ucm233726.htm

8.  http://www.flickr.com/photos/fdaphotos/sets/72157625403077684/

9.  http://www.cdc.gov/alcohol/fact-sheets/cab.htm

10.  http://www.ftc.gov/opa/2010/11/alcohol.shtm

11.  http://www.ttb.gov/main_pages/caffeine-added.shtml

12.  http://www.facebook.com/FDA

13.  http://www.fda.gov/AboutFDA/ContactFDA/StayInformed/RSSFeeds/PressReleases/rss.xml

14.  http://www.fda.gov/AboutFDA/ContactFDA/StayInformed/RSSFeeds/ucm144575.htm

Exhibit D

En Español | Search | Mobile Site



| Home | About Chuck | NY Regions | Newsroom | Services for New Yorkers | For Students | Contact Chuck |

Press Release

[Printer-friendly Version](#)

FOR IMMEDIATE RELEASE: November 16, 2010

**SCHUMER: FDA TO EFFECTIVELY BAN CAFFEINATED ALCOHOLIC DRINKS; FTC WILL NOTIFY MANUFACTURERS THAT THEY MAY BE ENGAGED IN ILLEGAL MARKETING OF UNSAFE BEVERAGES**

*After Months of Pressure by Schumer, FDA to Send Notice to Manufacturers of Caffeinated Alcoholic Beverages that Product is Not Considered Safe; Move Will Effectively Ban Products from the Market*

*FTC to Send Notices to Manufacturers That They Are Engaged in the Marketing of Unsafe Alcoholic Drinks*

*Schumer: Let This Serve as a Warning to Anyone Who Tries to Peddle Dangerous Beverages to Our Kids, Do it, And We Will Shut You Down*

U.S Senator Charles E. Schumer announced today that the Food and Drug Administration (FDA) will rule that caffeine is an unsafe food additive to alcoholic beverages, effectively making products such as Four Loko, Joose, and others like them, prohibited for sale in the United States. Additionally, the Federal Trade Commission (FTC) plans to notify manufacturers that they are engaged in the potential illegal marketing of unsafe alcoholic drinks. These announcements come after months of intense pressure by Senator Schumer to have the drinks banned because of serious risks to consumer health and safety.

"Let these rulings serve as a warning to anyone who tried to peddle dangerous and toxic brews to our children. Do it and we will shut you down," said Schumer. "This ruling should be the nail in the coffin of these dangerous and toxic drinks. Parents should be able to rest a little easier knowing that soon their children won't have access to this deadly brew."

After calls by Schumer to ban the drinks in New York, just this past week, the State Liquor Authority and the state's largest beer distributors agreed to stop selling these dangerous drinks in New York. In addition to New York's efforts, Oklahoma, Utah, Michigan, and Washington acted to ban the drinks as did a number of colleges, including Ramapo College, Worcester State University, the University of Rhode Island and the Wentworth Institute of Technology.

Popular drinks such as Four Loko and Joose contain as much as 2-3 coffee cups worth of caffeine and 2-3 cans of beer per container – a potent, dangerous mix that can be extremely hazardous for teens and adults alike. Last month, nine students passed out and were hospitalized after drinking Four Loko, leading states and universities across the country to issue ban, limit, or issue warnings about the drink.

Compounded with its health risks, beverages like Four Loko pose a unique danger because they target young people. The style of the beverages – with a vibrantly colored

**Resource Center**


**Contact Chuck**
Send Chuck an email using our webform


**FY 2011 Appropriations Requests**
Chuck's 2011 appropriations requests


**Schedule a Tour**
Plan your trip to Washington D.C.


**Chuck around New York**
See what Chuck has been doing in your area lately


**Medicare Help**
Help for problems dealing with Medicare


**Tax Time Assistance**
Resources to help with federal taxes and the IRS


**Veterans Assistance**
Help for those who have served our nation


**Grants Assistance**
Guide to applying for federal grants


**Foreclosure Help**
Foreclosure related assistance


**Services for New Yorkers**
For help cutting through the federal government's red tape

**Protecting Consumers**
Help and Resources for New York consumers



| Search The Site | Search |

**Search for a bill**
Search for bills from the 111th Congress

| | go |

aluminum can colors and funky designs –appeal to younger consumers, increasing the likelihood that the beverages will be consumed by young adults and creating a problem for parents and business owners who might be misled by the branding. Four Loko is also stocked next to other energy drinks, creating further confusion.

Last week, Schumer was joined in his efforts to ban the drink by Jacqueline Celestino, grandmother of Nicole Lynn Celestino, an 18 year old from Long Island who passed away after drinking the caffeinated alcoholic beverage Four Loko. Nicole, went into cardiac arrest after drinking Four Loko this past August, she had taken a diet pill that day. Nicole's family has become outspoken advocates for a ban on alcoholic caffeinated drinks like Four Loko.

The dangers of these drinks are well known. A recent study found that young and underage drinkers who combine alcohol with caffeine, which occurs with increasing frequency given the prevalence of beverages like Four Loko and Joose, are more likely to suffer injury, be the victim of sexual assault, drive while intoxicated, and require medical attention than drinkers who consume caffeine-free beverages. In 2008, Anheuser-Busch InBev NV and MillerCoors LLC reformulated caffeinated alcoholic beverages under pressure from several states and regulatory bodies, but smaller companies like the manufacturers of Four Loko and Joose managed to remain unnoticed.

###

**Washington D.C.**
313 Hart Senate Office Building
Washington D.C. 20510
Phone: 202-224-6542
Fax: 202-228-3027
TTD: 202-224-0420

**New York City**
757 Third Avenue
Suite 17-02
New York, NY 10017
Phone: 212-486-4430
Fax: 212-486-7693
TDD: 212-486-7803

**Albany**
Leo O'Brien Building
Room 420
Albany, NY 12207
Phone: 518-431-4070
518-431-4076

**Binghamton**
15 Henry Street
Room M103
Binghamton, NY 13901
Phone: 607-772-6792

**Buffalo**
130 South Elmwood Avenue
#660
Buffalo, NY 14202
Phone: 716-846-4111
Fax: 716-846-4113

**Hudson Valley**
One Park Place, Suite 100

Peekskill, NY 10566
Phone: 914-734-1532
Fax: 914-734-1673

**Long Island**
145 Pine Lawn Road #300
Melville, NY 11747
Phone: 631-753-0978
Fax: 631-753-0997

**Rochester**
100 State Street, Room 3040
Rochester, NY 14614
Phone: 585-263-5866
Fax: 585-263-3173

**Syracuse**
100 South Clinton Street
Room 841
Syracuse, NY 13261-7318

Phone: 315-423-5471
Fax: 315-423-5185



Privacy Statement | Site Map | Contact Chuck | En Español | Mobile Site

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

### NOTICE OF ASSIGNMENT TO UNITED STATES MAGISTRATE JUDGE FOR DISCOVERY

This case has been assigned to District Judge Mariana P. Pfaelzer and the assigned discovery Magistrate Judge is David T. Bristow.

The case number on all documents filed with the Court should read as follows:

## CV11- 386 MRP (DTBx)

Pursuant to General Order 05-07 of the United States District Court for the Central District of California, the Magistrate Judge has been designated to hear discovery related motions.

The United States District Judge assigned to this case will review all filed discovery motions and thereafter, on a case-by-case or motion-by-motion basis, may refer discovery related motions to the Magistrate Judge for hearing and determination

=============================================

**NOTICE TO COUNSEL**

*A copy of this notice must be served with the summons and complaint on all defendants (if a removal action is filed, a copy of this notice must be served on all plaintiffs).*

Subsequent documents must be filed at the following location:

| | | |
|---|---|---|
| [X] **Western Division**<br>312 N. Spring St., Rm. G-8<br>Los Angeles, CA 90012 | [ ] **Southern Division**<br>411 West Fourth St., Rm. 1-053<br>Santa Ana, CA 92701-4516 | [ ] **Eastern Division**<br>3470 Twelfth St., Rm. 134<br>Riverside, CA 92501 |

Failure to file at the proper location will result in your documents being returned to you.

Name & Address: Harold M. Hewell (Cal. SBN: 171210)
hmhewell@hewell-lawfirm.com
HEWELL LAW FIRM
105 West F Street, Second Floor
San Diego, California 92101
(619) 235-6854 · (888) 298-0177 (f)

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| KRYSTAL BONILLA, as an individual, and on behalf of all others similarly situated, | CASE NUMBER |
|---|---|
| PLAINTIFF(S) | **CV11 0386 MRP (DTBx)** |
| v. | |
| UNITED BRANDS COMPANY, INC., a California corporation, and 7-ELEVEN, INC., a Texas corporation, and DOES 1 through 20, inclusive, | **SUMMONS** |
| DEFENDANT(S). | |

TO:  DEFENDANT(S): UNITED BRANDS COMPANY, INC., a California corporation, and 7-ELEVEN, INC., a Texas corporation

A lawsuit has been filed against you.

Within  21  days after service of this summons on you (not counting the day you received it), you must serve on the plaintiff an answer to the attached ☒ complaint ☐ _____ amended complaint ☐ counterclaim ☐ cross-claim or a motion under Rule 12 of the Federal Rules of Civil Procedure.  The answer or motion must be served on the plaintiff's attorney,  Harold M. Hewell _____, whose address is HEWELL LAW FIRM, 105 West F Street, Suite 213, San Diego, California 92101 _____.  If you fail to do so, judgment by default will be entered against you for the relief demanded in the complaint.  You also must file your answer or motion with the court.

Clerk, U.S. District Court

Dated:  JAN 1 3 2011 _____

By:  _____
**CHRISTOPHER POWERS**
Deputy Clerk

*(Seal of the Court)*   **1181**

*[Use 60 days if the defendant is the United States or a United States agency, or is an officer or employee of the United States.  Allowed 60 days by Rule 12(a)(3)].*

## UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA
### CIVIL COVER SHEET

| I (a) PLAINTIFFS (Check box if you are representing yourself ☐) | DEFENDANTS |
|---|---|
| KRYSTAL BONILLA, as an individual, and on behalf of all others similarly situated. | UNITED BRANDS COMPANY, INC., a California corporation, and 7-ELEVEN, INC., a Texas corporation, and DOES 1 through 20, inclusive, |

| (b) Attorneys (Firm Name, Address and Telephone Number. If you are representing yourself, provide same.) | Attorneys (If Known) |
|---|---|
| Harold M. Hewell, HEWELL LAW FIRM, 105 West F Street, Second Floor, San Diego, California 92101, (619) 235-6854/(888) 298-0177 (f), Email: hmhewell@hewell-lawfirm.com | |

**II. BASIS OF JURISDICTION** (Place an X in one box only.)

☐ 1 U.S. Government Plaintiff     ☐ 3 Federal Question (U.S. Government Not a Party)

☐ 2 U.S. Government Defendant     ☒ 4 Diversity (Indicate Citizenship of Parties in Item III)

**III. CITIZENSHIP OF PRINCIPAL PARTIES** - For Diversity Cases Only
(Place an X in one box for plaintiff and one for defendant.)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business in this State | ☐ 4 | ☒ 4 |
| Citizen of Another State | ☒ 2 | ☐ 2 | Incorporated and Principal Place of Business in Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

**IV. ORIGIN** (Place an X in one box only.)

☒ 1 Original Proceeding   ☐ 2 Removed from State Court   ☐ 3 Remanded from Appellate Court   ☐ 4 Reinstated or Reopened   ☐ 5 Transferred from another district (specify):   ☐ 6 Multi-District Litigation   ☐ 7 Appeal to District Judge from Magistrate Judge

**V. REQUESTED IN COMPLAINT:   JURY DEMAND:** ☒ Yes   ☐ No (Check 'Yes' only if demanded in complaint.)

**CLASS ACTION under F.R.C.P. 23:** ☒ Yes   ☐ No      ☐ **MONEY DEMANDED IN COMPLAINT: $**_____

**VI. CAUSE OF ACTION** (Cite the U.S. Civil Statute under which you are filing and write a brief statement of cause. Do not cite jurisdictional statutes unless diversity.)
Class Action Fairness Act of 2005 ("CAFA"), Pub. L. No. 109-2, 119 Stat. 4 (2005); California statutory causes of action and common law cause of action.

**VII. NATURE OF SUIT** (Place an X in one box only.)

| OTHER STATUTES | CONTRACT | TORTS PERSONAL INJURY | TORTS PERSONAL PROPERTY | PRISONER PETITIONS | LABOR |
|---|---|---|---|---|---|
| ☐ 400 State Reapportionment | ☐ 110 Insurance | ☐ 310 Airplane | ☐ 370 Other Fraud | ☐ 510 Motions to Vacate Sentence Habeas Corpus | ☐ 710 Fair Labor Standards Act |
| ☐ 410 Antitrust | ☐ 120 Marine | ☐ 315 Airplane Product Liability | ☐ 371 Truth in Lending | | ☐ 720 Labor/Mgmt. Relations |
| ☐ 430 Banks and Banking | ☐ 130 Miller Act | ☐ 320 Assault, Libel & Slander | ☐ 380 Other Personal Property Damage | ☐ 530 General | ☐ 730 Labor/Mgmt. Reporting & |
| ☐ 450 Commerce/ICC Rates/etc. | ☐ 140 Negotiable Instrument | ☐ 330 Fed. Employers' Liability | ☐ 385 Property Damage Product Liability | ☐ 535 Death Penalty ☐ 540 Mandamus/ Other | Disclosure Act |
| ☐ 460 Deportation | ☐ 150 Recovery of Overpayment & Enforcement of Judgment | ☐ 340 Marine | **BANKRUPTCY** | ☐ 550 Civil Rights | ☐ 740 Railway Labor Act |
| ☐ 470 Racketeer Influenced and Corrupt Organizations | | ☐ 345 Marine Product Liability | ☐ 422 Appeal 28 USC 158 | ☐ 555 Prison Condition | ☐ 790 Other Labor Litigation |
| ☐ 480 Consumer Credit | ☐ 151 Medicare Act | ☐ 350 Motor Vehicle | ☐ 423 Withdrawal 28 USC 157 | **FORFEITURE/ PENALTY** | ☐ 791 Empl. Ret. Inc. Security Act |
| ☐ 490 Cable/Sat TV | ☐ 152 Recovery of Defaulted Student Loan (Excl. Veterans) | ☐ 355 Motor Vehicle Product Liability | **CIVIL RIGHTS** | ☐ 610 Agriculture | **PROPERTY RIGHTS** |
| ☐ 810 Selective Service | | ☐ 360 Other Personal Injury | ☐ 441 Voting | ☐ 620 Other Food & Drug | ☐ 820 Copyrights |
| ☐ 850 Securities/Commodities/ Exchange | ☐ 153 Recovery of Overpayment of Veteran's Benefits | ☐ 362 Personal Injury-Med Malpractice | ☐ 442 Employment | ☐ 625 Drug Related Seizure of | ☐ 830 Patent |
| ☐ 875 Customer Challenge 12 USC 3410 | ☐ 160 Stockholders' Suits | ☐ 365 Personal Injury-Product Liability | ☐ 443 Housing/Acco-mmodations | Property 21 USC 881 | ☐ 840 Trademark |
| ☐ 890 Other Statutory Actions | ☐ 190 Other Contract | ☐ 368 Asbestos Personal Injury Product Liability | ☐ 444 Welfare | ☐ 630 Liquor Laws | **SOCIAL SECURITY** |
| ☐ 891 Agricultural Act | ☐ 195 Contract Product Liability | | ☐ 445 American with Disabilities - Employment | ☐ 640 R.R. & Truck | ☐ 861 HIA (1395ff) |
| ☐ 892 Economic Stabilization Act | ☐ 196 Franchise | **IMMIGRATION** | ☐ 446 American with Disabilities - Other | ☐ 650 Airline Regs ☐ 660 Occupational Safety /Health | ☐ 862 Black Lung (923) ☐ 863 DIWC/DIWW (405(g)) |
| ☐ 893 Environmental Matters | **REAL PROPERTY** | ☐ 462 Naturalization Application | | ☐ 690 Other | ☐ 864 SSID Title XVI |
| ☐ 894 Energy Allocation Act | ☐ 210 Land Condemnation | ☐ 463 Habeas Corpus-Alien Detainee | ☐ 440 Other Civil Rights | | ☐ 865 RSI (405(g)) |
| ☐ 895 Freedom of Info. Act | ☐ 220 Foreclosure | ☐ 465 Other Immigration Actions | | | **FEDERAL TAX SUITS** |
| ☐ 900 Appeal of Fee Determi-nation Under Equal Access to Justice | ☐ 230 Rent Lease & Ejectment ☐ 240 Torts to Land ☐ 245 Tort Product Liability | | | | ☐ 870 Taxes (U.S. Plaintiff or Defendant) |
| ☐ 950 Constitutionality of State Statutes | ☐ 290 All Other Real Property | | | | ☐ 871 IRS-Third Party 26 USC 7609 |

**FOR OFFICE USE ONLY:**   Case Number: _____

# CV11 0386

**AFTER COMPLETING THE FRONT SIDE OF FORM CV-71, COMPLETE THE INFORMATION REQUESTED BELOW.**

**UNITED STATES DISTRICT COURT, CENTRAL DISTRICT OF CALIFORNIA**
**CIVIL COVER SHEET**

**VIII(a). IDENTICAL CASES:** Has this action been previously filed in this court and dismissed, remanded or closed? ☑ No  ☐ Yes
If yes, list case number(s): _____

**VIII(b). RELATED CASES:** Have any cases been previously filed in this court that are related to the present case? ☑ No  ☐ Yes
If yes, list case number(s): _____

**Civil cases are deemed related if a previously filed case and the present case:**

(Check all boxes that apply)  ☐ A. Arise from the same or closely related transactions, happenings, or events; or
 ☐ B. Call for determination of the same or substantially related or similar questions of law and fact; or
 ☐ C. For other reasons would entail substantial duplication of labor if heard by different judges; or
 ☐ D. Involve the same patent, trademark or copyright, _and_ one of the factors identified above in a, b or c also is present.

**IX. VENUE:** (When completing the following information, use an additional sheet if necessary.)

(a)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named plaintiff resides.
 ☐  Check here if the government, its agencies or employees is a named plaintiff. If this box is checked, go to item (b).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| COUNTY OF SAN BERNARDINO | |

(b)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** named defendant resides.
 ☐  Check here if the government, its agencies or employees is a named defendant. If this box is checked, go to item (c).

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| | UNITED BRANDS COMPANY, INC.: COUNTY OF SAN DIEGO 7-ELEVEN, INC.: STATE OF TEXAS |

(c)  List the County in this District; California County outside of this District; State if other than California; or Foreign Country, in which **EACH** claim arose.
 **Note: In land condemnation cases, use the location of the tract of land involved.**

| County in this District:* | California County outside of this District; State, if other than California; or Foreign Country |
|---|---|
| COUNTY OF SAN BERNARDINO | |

**\* Los Angeles, Orange, San Bernardino, Riverside, Ventura, Santa Barbara, or San Luis Obispo Counties**
Note: In land condemnation cases, use the location of the tract of land involved.

X.  SIGNATURE OF ATTORNEY (OR PRO PER): _____  Date January 12, 2011

**Notice to Counsel/Parties:** The CV-71 (JS-44) Civil Cover Sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law. This form, approved by the Judicial Conference of the United States in September 1974, is required pursuant to Local Rule 3-1 is not filed but is used by the Clerk of the Court for the purpose of statistics, venue and initiating the civil docket sheet. (For more detailed instructions, see separate instructions sheet.)

Key to Statistical codes relating to Social Security Cases:

| Nature of Suit Code | Abbreviation | Substantive Statement of Cause of Action |
|---|---|---|
| 861 | HIA | All claims for health insurance benefits (Medicare) under Title 18, Part A, of the Social Security Act, as amended. Also, include claims by hospitals, skilled nursing facilities, etc., for certification as providers of services under the program. (42 U.S.C. 1935FF(b)) |
| 862 | BL | All claims for "Black Lung" benefits under Title 4, Part B, of the Federal Coal Mine Health and Safety Act of 1969. (30 U.S.C. 923) |
| 863 | DIWC | All claims filed by insured workers for disability insurance benefits under Title 2 of the Social Security Act, as amended; plus all claims filed for child's insurance benefits based on disability. (42 U.S.C. 405(g)) |
| 863 | DIWW | All claims filed for widows or widowers insurance benefits based on disability under Title 2 of the Social Security Act, as amended. (42 U.S.C. 405(g)) |
| 864 | SSID | All claims for supplemental security income payments based upon disability filed under Title 16 of the Social Security Act, as amended. |
| 865 | RSI | All claims for retirement (old age) and survivors benefits under Title 2 of the Social Security Act, as amended. (42 U.S.C. (g)) |